United States District Court
Southern District of Texas
**ENTERED**
June 18, 2025
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| KIMBERLY G.,[1] | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. 4:24-cv-2542 |
| | § | |
| LELAND DUDEK, | § | |
| Acting Commissioner of Social | § | |
| Security, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Plaintiff Kimberly G. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. Pl.'s Compl., ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("the Act").[2] The parties filed cross motions for summary judgment. Pl.'s MSJ, ECF No. 12, 13; Def.'s MSJ, ECF No. 16.[3] Plaintiff seeks an order remanding for further consideration, arguing that the ALJ's RFC

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] Based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order Transferring, ECF No. 9.

[3] Plaintiff also filed a reply. ECF No. 19.

determination is not supported by substantial evidence because the ALJ erred by not finding her mental limitations severe and failed to incorporate mental limitations in the RFC determination or explain why any such limitations were not included. ECF No. 13. Commissioner counters that the ALJ's RFC determination is supported by substantial evidence. ECF No. 16. Based on the briefing, the record, and the applicable law, the Court finds that the ALJ failed to adequately assess Plaintiff's mental limitations at Step Two and failed to incorporate her mental limitations in the RFC. Thus, the Court grants Plaintiff's motion for summary judgment, denies Commissioner's motion for summary judgment, and remands the ALJ's decision.

## I.    BACKGROUND

Plaintiff was 49 years old on the alleged disability onset date, R. 289[4] and has a limited education. R. 24. Plaintiff worked as a driver for an adult daycare and home health aide. R. 280, 294. Plaintiff alleges a disability onset date of August 28, 2020. R. 61. Plaintiff claims she suffers from physical and mental impairments. R. 62.

On July 27, 2021, Plaintiff filed her application for disability insurance and supplemental security income benefits under Titles II and XVI of the Act. R. 14, 235–46. Plaintiff based [5] her application on "sciatica, vision problems, back problems, shoulder problems, stomach problems, mass on ovaries, knees, right hand,

---

[4] "R." citations refer to the electronically filed Administrative Record, ECF No. 11.

[5] For Plaintiff's disability insurance benefits, the relevant time period is August 28, 2020— Plaintiff's alleged onset date—through June 30, 2022—Plaintiff's date last insured. R. 16, 289.

depression." R. 75, 293. The Commissioner denied Plaintiff's claim initially, R. 59–72, and on reconsideration. R. 75–102.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 38–58. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 38–58. The ALJ issued a decision denying Plaintiff's request for benefits.[6] R. 11–33. The Appeals Council denied Plaintiff's request for review, upholding the ALJ's decision to deny benefits. R. 1–6.

Plaintiff appealed the Commissioner's ruling to this Court. ECF No. 1.

## II.    STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a

---

[6] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a). The ALJ here determined Plaintiff was not disabled at step five. R. 25. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 16 (citing 20 C.F.R. §§ 404.1571, 416.971 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: epigastric/hiatal hernia, ovarian cyst, lumbar dextroscoliosis, and obesity. R. 16 (citing 20 C.F.R. §§ 404.1520 (c), 416.920(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 32 (referencing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except she can frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl. R. 20. At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work. R. 24 (citing 20 C.F.R. §§ 404.1565, 416965). At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, and found that there are jobs that exist in the national economy that Plaintiff can perform: marker, sales attendant, and housekeeping. R. 25. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 25.

party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de*

*novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III.    DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME UNDER THE ACT.

The Act permits the payment of insurance benefits to persons who have contributed to the program and who suffer a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). These payments are referred to as disability insurance benefits. The Act also permits Supplemental Security Income ("SSI") payments to the aged, blind, and disabled to assure that their income does not fall below the poverty line. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.110. Although these programs are distinct,

applicants must prove "disability" under both sections. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(a)(3)(A) (SSI). Both sections define disability using virtually the same language. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (using "unable" rather than "inability"). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). "The suffering of some impairment does not establish disability; a claimant is disabled only if he is 'incapable of engaging in any substantial gainful activity.'" *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1987)). "The law and regulations governing the determination of disability are the same for both programs." *Roberts v. Colvin*, 946 F. Supp. 2d 646, 657 (S.D. Tex. 2013) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

## IV.    THE SHIFTING BURDEN OF PROOF.

The Act places the burden of establishing disability on the claimant. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). To be entitled to disability insurance benefits, a claimant "must show that he was disabled on or before the last day of his insured status." *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981). SSI benefits are dependent on proof of disability and indigence, and a claimant can receive SSI payments once he applies to the program, no matter how long he has been disabled. *Torres v. Colvin*, No. 4:13-cv-2571, 2014 WL 4064002, at *6 (S.D. Tex. Aug. 15, 2014) (citing 42 U.S.C. §§ 1382a, c(a)(3), *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999), and 20 C.F.R. § 416.335).

Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## V.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises two arguments related to the ALJ's treatment of her mental limitations; that the ALJ erred: (1) finding Plaintiff's mental impairments of major

depressive disorder, post-traumatic stress disorder, and bipolar disorder were "non-severe;" and alternatively, (2) excluding consideration of Plaintiff's mental impairments when determining RFC. ECF No. 13. Commissioner responds that "[o]nce the ALJ proceeds past step two, [] the labeling of an impairment as 'severe' or 'non-severe' has no legal significance." ECF No. 16 at 5. Regarding the RFC determination, Commissioner asserts that the ALJ expressly found that the residual functional capacity assessment reflects the degree of limitation that the ALJ found in the "paragraph B" mental function analysis and the ALJ's decision is supported by substantial evidence because "the ALJ reasonably concluded that, while Plaintiff has mental impairments, her symptoms abate with treatment." ECF No. 16 at 7, 8.

## A.    The ALJ Improperly Assessed Plaintiff's Mental Limitations.

Plaintiff argues that although the ALJ referenced the correct standard for evaluating severity, the ALJ failed to properly apply the standard and erroneously found that Plaintiff experienced no limitation in her ability to: understand, remember, or apply information; or interact with others; and mild limitations in her ability to concentrate, persist, and maintain pace; or adapt or manage herself. ECF No. 13. Plaintiff argues that the ALJ ignored record evidence related to her mental impairments that demonstrate Plaintiff's mental impairments are more significant and improperly rejected the only medical opinions addressing Plaintiff's mental health, which found her significantly more impaired. ECF No. 13 at 11–14.

### 1.    *Plaintiff Bears the Burden at Step Two.*

At Step Two, Plaintiff bears the burden of showing that she has a severe impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities. *See Griffin v. Saul*, No. CV H-19-3321, 2021 WL 723941, at *4 (S.D. Tex. Feb. 24, 2021). The requirement that Plaintiff have a severe impairment is generally considered to be "a *de minimis* screening device to dispose of groundless claims." *See id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987))). "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). "Under the standard set forth in *Stone*, an impairment causing any interference with work ability, even minimal interference, is a severe impairment." *Griffin*, 2021 WL 723941, at *4 (citing *Scroggins v. Astrue*, 598 F.Supp.2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work.")).[7]

---

[7] For a limitation to be considered "mild," a claimant's functioning must be only affected "slightly." For a limitation to be considered "moderate," a claimant's functioning must be "fair." For a limitation to be considered "marked," a claimant's functioning must be considered "seriously limited." *See* 20 C.F.R. Subpt. P, App. 1, 12.00E, F(2).

"The Social Security regulations set forth a psychiatric review technique—also known as the 'special technique'—for evaluating mental impairments at all levels of the administrative review process." *Estrada v. Comm'r of Soc. Sec. Admin.*, No. SA-18-CV-00002-DAE, 2019 WL 453619, at *4 (W.D. Tex. Feb. 5, 2019) (citing 20 C.F.R. § 404.1520a). "The special technique identifies four broad functional areas that the ALJ must consider in evaluating whether a claimant has a mental impairment: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself." *Id.* (citing 20 C.F.R. § 404.1520a(c)(3)).

"At step two, the ALJ must rate the degree of a claimant's limitations as to these four functional areas on a five-point scale (none, mild, moderate, marked, and extreme)." *Id.* (citing 20 C.F.R. § 404.1520a(c)(4)). "The ALJ's written decision must incorporate specific findings as to the degree of limitation in each of these four functional areas." *Id.* (citing 20 C.F.R. § 404.1520a(e)(4)). "After rating the degree of functional limitation resulting from a mental impairment, the ALJ must determine the severity of the impairment at step two." *Id.* (citing 20 C.F.R. § 404.1520a(d)). "If the ALJ rates the degree of limitation in any functional area as 'none' or 'mild,' the ALJ 'will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [an] ability to do basic work activities.'" *Id.* (quoting 20 C.F.R. § 404.1520a(d)(1)). "The

regulations do not conversely specify which findings, if any, dictate a conclusion that a given impairment is severe." *Id.* (citing 20 C.F.R. § 404.1520a(d)(1)).[8]

"The ALJ considers several factors when evaluating medical opinions, including: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors as applicable." *Bustos v. Kijakazi*, No. 2:23-CV-00003, 2023 WL 9102280, at *10 (S.D. Tex. Dec. 5, 2023), *adopted*, No. 2:23-CV-00003, 2024 WL 55501 (S.D. Tex. Jan. 4, 2024) (citing 20 C.F.R. §§ 404.1520c(c); 416.920c(c)). "The most important factors when evaluating persuasiveness are supportability [9] and consistency. [10] " *Id.* (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)). "The ALJ must articulate how persuasive they find

---

[8] "Under the governing regulations, if [Plaintiff] does 'not have a severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . . , we will find that you are not disabled.'" *Griffin*, 2021 WL 723941, at *4 (quoting 20 C.F.R. § 404.150(a)(4)(ii), 416.920(a)(4)(ii)). "But, because the regulations require [Plaintiff] to show only 'a severe' impairment, that is, one severe impairment in order to avoid a denial of benefits at step two, the failure to find a particular impairment severe at step two is not reversible in and of itself as long as the ALJ finds that at least one other impairment is severe." *Id.* "However, even if an impairment is found non-severe at step two, the ALJ must still 'consider the limiting effects of all [Plaintiff's] impairment(s), even those that are not severe, in determining [RFC].'" *Id.* (quoting 20 C.F.R. §§ 404.1545(e), 416.945(e)); *see also* 20 C.F.R. § 404.1523; Social Security Ruling 96-8p, 1996 WL 374184, at *5; *Loza*, 219 F.3d at 393 (ALJ must consider combined effects of all impairments).

[9] "'Supportability' means that '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.'" *Bustos*, 2023 WL 9102280, at *10 (quoting 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1)).

[10] "'Consistency' means that '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.'" *Bustos*, 2023 WL 9102280, at *10 (quoting 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2)).

all of the medical opinions and prior administrative medical findings in the record."

*Id.* (citing 20 C.F.R. §§ 404.1520c(b); 416.920c(b)). "The ALJ must address

supportability and consistency, but the other factors are optional." *Id.* (citing 20

C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2)).

### 2.    *The ALJ Improperly Rejected All Medical Opinions Addressing Plaintiff's Mental Health.*

In the instant case, the ALJ determined that Plaintiff's major depressive

disorder, PTSD, and bipolar disorder were not severe because Plaintiff only

experienced mild limitations in two of the four functional areas and no limitation in

the other two functional areas. The ALJ summarized Plaintiff's mental health history

and then explained:

> While the claimant has mental diagnoses, with medication she appears to have decreased symptoms. . . . The first functional area is understanding, remembering, or applying information. In this area, the claimant has no limitation. Her memory was intact at the consultative examination. She was able to provide details about her personal history. She knew the current president and reported the prior president to have been Barack Obama.[11] She was able to recall objects immediately and after a delay (Ex. 10F, p. 6).[12] The next functional area is interacting with others. In this area, the claimant has no limitation. The claimant is able to live with her daughter. She reported that she does not have much contact with her family and has no friends outside of her family (Ex. 10F, p. 4). Throughout the medical record she was also homeless at times but interacted well with homeless services and the time of the

---

[11] Plaintiff points out that Barack Obama is the incorrect answer as the prior president of the United States during Joseph Biden's presidency was Donald Trump. ECF No. 13 at 6.

[12] Psychologist and consultative examiner Dr. Gayle Pitcher evaluated Plaintiff on August 30, 2022. Dr. Pitcher opined that Plaintiff's remote memory functions and short-term memory appeared intact. R. 674.

hearing was in her own apartment with the help of the Houston Housing Authority.[13] The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has mild limitation. At the consultative examination her concentration and attention were mildly deficient. She could not spell the word "world" forwards or backwards, but she was able to successfully subtract serial 7's. Her judgement appeared to be adequate, and her insight appeared to be fair (Ex. 10F, p. 6).[14] The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant was cooperative and appropriately groomed when she was seen for consultative examinations (Ex. 10F, p. 1).[15] Her mental status examination was largely normal in July 2023, and she was noted to have been cleanly groomed and dressed (Ex. 24F, p. 12).[16]

R. 18–19. The ALJ's decision at Step Two as to Plaintiff's mental impairments is not supported by substantial evidence.

In *Salmond v. Berryhill*, the Fifth Circuit found error where the ALJ found the

---

[13] Plaintiff's oldest daughter was murdered in January 2022, which exacerbated Plaintiff's mental impairments and caused her to be homeless for over two years. R. 42 (Plaintiff's attorney argued she "[l]ived with 28-year-old daughter. Her daughter was shot and killed in January 2022, and her four grandchildren had gone missing."), 45 (Plaintiff testified that before moving into her Harris County Housing Authority apartment, she was homeless for two and a half years), 50 (Plaintiff testified that her mental illnesses got worse over the years, "especially when [her] daughter got killed last year" by being shot "over 30 times."). Dr. Pitcher reported that Plaintiff believed her living daughter to be "trifling" and a "procrastinator" and found it difficult to be around her autistic grandchild due to his noise. R. 671. Dr. Pitcher also reported that Plaintiff said she was irritable with family members, sometimes thought about harming them, and that her family did not want to see her, but she did not care. R. 670–72. Dr. Pitcher opined that "[i]t appears unlikely that [Plaintiff] could maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or cope with normal pressures in a competitive work setting." R. 675.

[14] R. 674 (Dr. Pitcher's report).

[15] R. 670 (Dr. Pitcher's report).

[16] Treatment records dated July 27, 2023 from the Harris Center for Mental Health Northwest Adult Clinic indicated that Plaintiff was cleanly groomed and dressed. R. 975. The same record also indicated that Plaintiff had homicidal thoughts about harming family members, but no intent. R. 975.

claimant's mental impairments to be non-severe where the record showed all medical professionals agreed the claimant's symptoms would be expected to interfere with his ability to work and their treatment notes did not conflict with their opinions. 892 F.3d 812, 818 (5th Cir. 2018) (error where "the ALJ rejected the medical opinions of treating and examining doctors alike, without contradictory evidence from a medical expert of any kind."). Here, as Plaintiff noted and like the claimant in *Salmond*, every single medical opinion of record the ALJ discussed throughout the written decision—not just at Step Two—confirmed that Plaintiff more than satisfied the *de minimis* standard at Step Two of having an impairment that, at the very least, would be expected to minimally interfere with her ability to work. ECF No. 13 at 11 (citing *Salmond*, 892 F.3d at 817). Furthermore, as discussed below, these medical opinions are not contradicted by their own examination notes. Instead, the ALJ rejected these medical opinions based on its own lay interpretation of medical records—medical records of only a few months and which were outside of the DIB relevant period.

### a.    Dr. Pitcher found Plaintiff suffered more than a minimal limitation in her ability to do basic work activities.

In analyzing the Paragraph B criteria, the ALJ largely relied on the examination by Dr. Gayle Pitcher, Ph.D., a licensed psychologist and consultative examiner, but then rejected Dr. Pitcher's opinions that Plaintiff's "condition has persisted despite medical treatment and medication" and "appear[s] to be negatively

impacting her mental health," but "could improve with consistent medical and psychiatric care." R. 675. The ALJ also rejected Dr. Pitcher's opinion that Plaintiff "is unlikely to have the ability to sustain concentration and persist in work-related activity at a reasonable pace due to depression and anxiety" or "maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public, or cope with normal pressures in a competitive work setting." R. 675.

In determining Plaintiff's RFC later in the decision, which included no mental limitations, the ALJ rejected Dr. Pitcher's opinions as internally inconsistent with her findings and unsupported by the longitudinal record. R. 24. The ALJ stated that "the report by Dr. Pitcher of the results of the mental status exam showed normal findings," inconsistent with her opinion that Plaintiff was limited in her mental abilities. R. 24. The ALJ noted Plaintiff's ability to "demonstrate[] simple but generally logical thought process that was goal directed; she was oriented, her remote memory was intact, short memory was intact and medium memory was intact. The claimant's attention and concentrated were noted as only mildly deficient." R. 24. This evaluation of Dr. Pitcher's report cherry-picks her examination notes and ignores the pertinent parts of her opinions: that Plaintiff is unlikely to maintain concentration and persist in a work-related activity at a reasonable pace and could not maintain effective social interaction on a consistent

and independent basis with supervisors, co-workers, and the public, or cope with normal pressures in a competitive work setting. R. 675. Dr. Pitcher's report demonstrates a basis for both concerns. Regarding her ability to interact with others, Dr. Pitcher's report notes that Plaintiff explained that she did not get along with her daughter and other family members and even had homicidal ideations about them. R. 670, 671, 672. Regarding her ability to maintain concentration, Dr. Pitcher's report notes that Plaintiff "demonstrated simple but generally logical thought process that was goal directed," but *also* demonstrated "rambling, disorganized thinking and occasional mildly tangential thinking," and her "[a]bstract thinking appeared deficient." R. 673. Further, Plaintiff demonstrated "[s]ome evidence of abnormal thought content." R. 673. The record shows that Dr. Pitcher's examination notes do not contradict her opinions.

The ALJ also asserted that Dr. Pitcher's report was not supported by the record because Plaintiff "has been seeing a therapist and taking medication which, she reported helps with her moods" and "has a full range of activities of daily living including living alone, shopping, preparing meals, interacting with others and performing household chores." R. 24 (citing R. 689 (treatment notes from September 29, 2022 visit to UTHealth Harris County Psychiatric Center where Plaintiff's chief

complaint was "I wanted to kill myself");[17] 318–19 (Plaintiff's vision questionnaire dated June 11, 2022). Neither of these citations represent what the ALJ claims they represent—one record is completely irrelevant and the other demonstrates how dire Plaintiff's mental health has been, the opposite of what the ALJ asserted.

### b.    Dr. Chahal found Plaintiff suffered more than a minimal limitation in her ability to do basic work activities.

Next, although not discussed at Step Two, the ALJ also rejected the opinions of Raman Chahal, M.D., the state agency psychiatrist, in determining RFC:

> [Dr. Chahal] opined that the claimant had a mild limitation in the areas of understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace and adapt and manage oneself indicating a non-severe mental impairment from her alleged onset date to June 30, 2022. Thereafter he opined that she has mild limitation in the area of understand, remember, or apply information; and interact with others and a moderate limitation in the area of concentrate, persist or maintain pace; and adapt or manage oneself. He opined further that the claimant can understand and remember simple and detailed

---

[17] These treatment notes also indicated that Plaintiff called the crisis line and reported "increased psychiatric symptoms since March 2022. She reported dealing with stressors, chronic health problems, not been seeing a medical provider, financial problems, lives with her 28 year old daughter and 4 year old grandson who has autism. She reports that her older daughter was shot and killed in January 2022 and her four grandchildren have gone missing. She reported increased mood lability, mood swings, irritable mood, angry mood, frustration, racing thoughts, poor sleep, depressed mood, decreased appetite, feeling helpless, hopeless, overwhelmed. She reports having increase in auditory hallucinations saying negative things and telling her to harm self. She reports also having visual hallucinations of shadows and people. She had suicidal thoughts of wanting to die by running into traffic, mumping in front of a car, denies delusions. Patient has passive homicidal thoughts of wanting to harm her daughter but denied any intent or plan. She reported sobriety from cocaine, cannabis since last year." R. 689–90. Upon examination, Plaintiff showed positive "for depressive themes and life circumstance themes," a depressed mood, auditory and visual hallucinations." R. 694. Plaintiff's cognitive exam showed mostly normal or intact results, but limited insight and judgment. R. 694. Plaintiff was ultimately admitted to the hospital for "suicidal ideation, homicidal ideation, and acute psychosis with inability to care for self." R. 696. Plaintiff was discharged weeks later on October 19, 2022. R. 689.

instruction and procedures but may have increasing difficulty as the instruction become more complex. She can maintain concentration on adequately practiced, routinized and repetitively moderately detailed 2-3 step tasks, not complex, for 2-hour intervals and on simple tasks for extended periods to complete a workday or work week on a sustained basis. She can follow a routine schedule within customary tolerances. She can interact/ relate adequately with others in her work environment and can adapt to basis and routine workplace changes and handle a stable work routine that does not require frequent changes (Ex. 7A; 8A).[18] The undersigned does not find that the opinion of severe mental impairment persuasive. The claimant has a diagnosed mental condition that is controlled with medication. Her mental status examinations are largely normal, and she is taking medication that controls the symptoms of her depression, mood swings and anxiety. His opinion is inconsistent with the overall record and he must have relied heavily on the one time hospital admission. However, improvement was noted thereafter.

R. 23–24. Although the ALJ attempts to discount Dr. Chahal's opinions based on several months of records indicating increasingly improved symptoms due to medication changes, the Court finds this to be error.[19] The Court rejects the ALJ's

---

[18] R. 75–86 (Dr. Chahal's report dated January 28, 2023); 89–95 (same).

[19] "[E]specially in the context of mental health issues, it is common for symptoms to wax and wane in the course of treatment. Periods of improvement should be treated with caution." *Pena v. Saul*, No. 7:19-CV-0005, 2019 WL 8223588, at *23 (S.D. Tex. Dec. 26, 2019), *adopted*, No. 7:19-CV-00005, 2020 WL 1234281 (S.D. Tex. Mar. 13, 2020) (citing *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms."); *accord Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better ... does not imply that the condition has been treated."); *see also Brendon F. v. O'Malley*, No. 4:23-CV-02981, 2024 WL 4101814, at *5 (S.D. Tex. July 15, 2024) ("People with mental health issues experience fluctuations in their symptoms, requiring the ALJ to consider the patient's overall well-being and the nature of the symptoms without focusing on a single or isolated report or even a period of improvement or feeling better.") (citing *Pena*, 2019 WL 8223588, at *23). Of course, merely mentioning her mental health impairments does not establish that Plaintiff is disabled—but here, medical records demonstrate years of persistent mental illness with a few months of improvement, and Plaintiff testified to

characterization that the record shows Plaintiff's symptoms are controlled by medication. The treatment notes the ALJ relied on show a gradual improvement, but still note Plaintiff's symptoms of mood swings, flashbacks, nightmares, and visual hallucinations, R. 979, and diagnoses that Plaintiff's bipolar disorder and PTSD were in *partial* remission. R. 982 (treatment records dated April 26, 2023 from Northwest Mental Health Clinic).[20]

Here, every physician asked to provide an opinion on the issue opined that Plaintiff's mental impairments were severe enough that they would, at the very least, minimally interfere with her ability to work. These opinions did not contradict their own examination notes or the longitudinal record. As noted in *Salmond*, "[t]his is not a case in which the treater disagrees with the examiner." *Salmond*, 892 F.3d at 818. Rather, "all of the medical professionals in this record agree that [Plaintiff's] symptoms would be expected to interfere with [her] ability to work." *Id.* So, while the Court is careful not to reweigh the evidence or substitute its judgment for the ALJ, a "finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Cave v. Comm'r, Soc.*

---

currently ongoing mental health symptoms, including her shortened attention span and inability to get along with others. R. 51.

[20] Again, these 2023 records should have no bearing on determining Plaintiff's disability insurance benefits because, as noted above, the relevant time period is August 28, 2020—Plaintiff's alleged onset date—through June 30, 2022—Plaintiff's date last insured. R. 16, 289.

*Sec.*, No. 3:24-CV-00094-BJ, 2024 WL 3183227, at *5 (N.D. Tex. June 26, 2024) (citing *Whitehead v. Colvin*, 820 F.3d 776, 782, 779 (5th Cir. 2016)).

As discussed above, the record does not support the ALJ's decision. "Even though the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion, the issue here is there is insufficient evidence to support the ALJ's conclusion." *See Cave*, 2024 WL 3183227, at *5 (quoting *Salmond*, 892 F.3d at 819).

## B.    The Error is Harmful.

"Generally, where there is an error at step two, but the ALJ progresses beyond step two and develops an RFC that encompasses all of the claimant's impairments – those that are severe and those that are non-severe–the error is considered harmless." *Teri V. v. O'Malley*, No. 4:23-CV-2307, 2024 WL 3243477, at *12 (S.D. Tex. June 27, 2024) (citing *Griffin*, 2021 WL 723941, at *4 (citing *Gibbons v. Colvin*, No. 3:12–CV–0427–BH, 2013 WL 1293902 *16 (N.D. Tex. 2013) (any error at step two in assessing the claimant's mental impairment was harmless); *Reliford v. Colvin*, No. H–12–1850, 2013 WL 1787650 *13 (S.D. Tex. 2013) ("even if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis"); *Garcia v. Astrue*, No. M.–08–264, 2012 WL 13716 (S.D. Tex. 2012) (even if the ALJ erred at step two in failing to address the severity of the

claimant's right leg venous thrombosis, that error was harmless because the ALJ considered all the claimant's limitations in determining his RFC, and decided the case at step five))).

Here, while the ALJ did progress beyond step two, the ALJ did not include *any* mental limitations in the RFC that would account for or accommodate Plaintiff's PTSD, bipolar disorder, or major depressive disorder, whether severe or not. R. 20–24. Instead, the ALJ specifically did not include any mental limitations, and in doing so, rejected all medical opinions addressing Plaintiff's mental impairments and Plaintiff's testimony, relying on the several months of improvement on medication. R. 23–24. Insofar as the ALJ erred by not considering Plaintiff's PTSD, bipolar disorder, or major depressive disorder to be a severe impairment at Step Two, the ALJ also erred by failing to make any accommodation in the RFC for Plaintiff's PTSD, bipolar disorder, or major depressive disorder. *See Teri V.*, 2024 WL 3243477, at *12 (citing *Griffin*, 2021 WL 723941, at *8 (citing *Loza*, 219 F.3d at 393 ("In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If the ALJ finds a medically severe combination of impairments, 'the

combined impact of the impairments will be considered throughout the disability determination process.'") (internal citations omitted))).

The ALJ's error was not harmless. *See Teri V.*, 2024 WL 3243477, at *12 (citing *Griffin*, 2021 WL 723941, at *8 (citing *Patel v. Berryhill*, No. 4:16-CV-02066, 2017 WL 4155463, at *3 (S.D. Tex. Sept. 19, 2017) (ALJ did not commit harmless error when he determined plaintiff's medically determinable mental impairments of depression and anxiety were not severe; this error led to the failure to include any mental limitations in the residual-functional-capacity assessment, which in turn, led directly to the conclusion that plaintiff could perform his past relevant work); *Corbitt v. Comm'r of Soc. Sec. Admin.*, No. 3:10-10-CV-558-CWR-LRA, 2013 WL 603896, at *5-6 (S.D. Miss. Feb. 19, 2013) (remanding case where the "ALJ's decision show[ed] that he did not seriously consider the specific problems" that the claimant's "diabetes create[d]" either at step two or "in the remainder of the five-step evaluation process to justify a finding of harmless error"))).

In sum, the ALJ's unsupported determination that Plaintiff's mental impairments were not severe at Step Two clouded the Step Four determination insofar as no mental limitations were included in the RFC. As a result, that Step Two error was not harmless, and therefore remand for further development and

consideration is warranted. *See Teri V.*, 2024 WL 3243477, at *13 (citing *Griffin*, 2021 WL 723941, at *9).[21]

## VI.    CONCLUSION

Therefore, it is **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 12, is **GRANTED**. Commissioner's motion for summary judgment, ECF No. 16, is **DENIED**. The ALJ's decision denying benefits is **REVERSED,** and the case is **REMANDED** for proceedings consistent with Memorandum and Order.

Signed at Houston, Texas, on June 18, 2025.

Dena Palermo
_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[21] Because the Court remands the case for the ALJ to reconsider its decision at Step Two regarding the severity of Plaintiff's mental impairments, the ALJ should reconsider the RFC determination as well and either include limitations in the RFC determination for such impairments or explain why such impairments are excluded from the RFC determination. *Pollock v. Comm'r, Soc. Sec. Admin.*, No. 4:20-CV-01032-P, 2021 WL 4557469, at *8 (N.D. Tex. Sept. 20, 2021*), adopted sub nom. JAYME ELISE POLLOCK, Plaintiff, v. COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, Defendant.*, No. 4:20-CV-01032-P, 2021 WL 4552257 (N.D. Tex. Oct. 5, 2021) (citing *Martha L. v. Saul*, No. 1:20-CV-00003-H-BU, 2021 WL 3610316, at *4 (N.D. Tex. July 27, 2021), *adopted*, No. 1:20-CV-003-H-BU, 2021 WL 3604082 (N.D. Tex. Aug. 13, 2021)).